## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLEAR BLUE INSURANCE COMPANY,<br><br>                            *Plaintiff*,<br><br>v.<br><br>ARM OR ALLY, LLC, and<br>ARM OR ALLY, S, LLC,<br><br>                            *Defendants*. | Civil Action No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Clear Blue Insurance Company ("Clear Blue") files this Complaint against Defendants Arm or Ally, LLC ("Arm or Ally") and Arm or Ally S, LLC ("Arm or Ally S") (collectively, the "Arm or Ally Companies") for declaratory judgment under 28 U.S.C. § 2201.

## PRELIMINARY STATEMENT

1. Arm or Ally is a firearms retailer based in Missouri and North Carolina.

2. Arm or Ally S is a wholly owned subsidiary of Arm or Ally.

3. Arm or Ally is a defendant in a series of lawsuits (the "Ghost Gun Lawsuits" or the "Lawsuits," as further defined below) brought by the State of New York and various municipalities within New York. The Lawsuits allege that Arm or Ally intentionally shipped unfinished frames and receivers—firearm components that the Lawsuits allege are easily assembled into fully functional firearms—into New York, allegedly violating federal, state, and local laws. The Lawsuits further allege that Arm or Ally's conduct led to people possessing firearms who were not legally permitted to possess them, and that Arm or Ally knew this would occur. In addition, the Lawsuits allege that Arm or Ally's shipment of unfinished frames and receivers into New York led to a foreseeable increase in gun violence, which has cost the State and its municipality money.

4. Clear Blue issued commercial general liability insurance policy no. BB01-CCP-000264-00 to Arm or Ally from January 19, 2022 to January 19, 2023 (the "Clear Blue Policy" or the "Policy"). The Clear Blue Policy is a primary insurance policy with a $1 million per-occurrence limit of liability and $2 million general aggregate limit. A true and accurate copy of the Clear Blue Policy is attached hereto as Exhibit A.

5. The Arm or Ally Companies have demanded that Clear Blue provide them with a defense in the Ghost Gun Lawsuits and indemnify them for any settlements or judgments they may pay in those Lawsuits. Through this action, Clear Blue seeks a declaration that the Arm or Ally Companies are not entitled to a defense or indemnity for several independent reasons.

6. First, the Clear Blue Policy affords Arm or Ally coverage only if the Ghost Gun Lawsuits allege an "occurrence," defined as an accident, from Arm or Ally's standpoints. However, the Ghost Gun Lawsuits do not charge the Arm or Ally Companies with *accidental* conduct. Instead, the Ghost Gun Lawsuits allege that Arm or Ally deliberately shipped firearm components into New York in violation of various laws and that it did so knowing its actions would lead to a swift increase in gun violence. Those allegations are not allegations of accidental conduct under governing law.

7. Second, the Clear Blue Policy only covers sums that Arm or Ally becomes legally obligated to pay as damages because of "bodily injury." The Ghost Gun Lawsuits make no such allegations. Any sums that Arm or Ally may become legally obligated to pay to the State or its municipalities will not be paid as "damages because of" any particular "bodily injury."

8. Third, the Clear Blue Policy only covers damages because of "bodily injury" that occurred during the policy period. The Ghost Gun Lawsuits allege damages because of "bodily injury" sustained before January 19, 2022, and after January 19, 2023.

2

9. Fourth, some or all the remedies that the Ghost Gun Lawsuits seek against Arm or Ally are not the kind of "damages" the Clear Blue Policy covers.

10. Fifth, Arm or Ally S is not a defendant in the Ghost Gun Lawsuits, but in any event, is not the named insured or an insured under the Clear Blue Policy.

11. Therefore, Clear Blue seeks declarations that it is not obligated to provide coverage to the Arm or Ally Companies under the Clear Blue Policy for any of the Ghost Gun Lawsuits.

## PARTIES

12. At all times material to this action, Plaintiff Clear Blue is a Texas corporation with its principal place of business in Dallas, Texas.

13. At all times material to this action, Arm or Ally is a limited liability company incorporated in the State of Missouri. Upon information and belief, Arm or Ally has three members: Robert Humble, Geoffrey Poitras, and James Tobin. Robert Humble and Geoffrey Poitras are individuals who are domiciled in Missouri. James Tobin is an individual domiciled in North Carolina.

14. At all times material to this action, Arm or Ally S is a limited liability company incorporated in the State of Missouri. Upon information and belief, Arm or Ally S has the same three members as Arm or Ally: Robert Humble, Geoffrey Poitras, and James Tobin.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201.

16. Complete diversity exists between the parties because Clear Blue is a citizen of Texas and the Arm or Ally Companies are citizens of Missouri and North Carolina.

17. Further, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs, and fees, because the limits of the Clear Blue Policy are $1 million per "occurrence" subject to a $2 million general aggregate limit. The Arm or Ally Companies have demanded that Clear Blue defend them in the Ghost Gun Lawsuits and indemnify them up to the Policy's full limit.

18. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Clear Blue's claims occurred in the Southern District of New York.

19. The Arm or Ally Companies have requested coverage from Clear Blue for the Lawsuits under the Clear Blue Policy, which covers the policy period from January 19, 2022 to January 19, 2023. Clear Blue disputes that any coverage is owed under the Clear Blue Policy. Accordingly, this is an actual, ripe, and justiciable controversy.

## FACTUAL ALLEGATIONS

**I. THE NEW YORK ACTION**

20. On June 29, 2022, the State of New York filed a Complaint in the Supreme Court of the State of New York against various gun sellers, including Arm or Ally. The case was subsequently removed to the United States District Court for the Southern District of New York, where it is captioned *New York v. Arm or Ally, LLC, et al.*, No. 1:22-cv-06124-JMF (S.D.N.Y.) (the "New York Action"). The operative complaint in the New York Action as of the filing of this lawsuit is the State of New York's Second Amended Complaint (the "New York Action Complaint"). *See id.* ECF No. 157. Arm or Ally S is not named as a defendant in the New York Action. A true and accurate copy of the New York Action Complaint is attached hereto as Exhibit B.

21. The New York Action Complaint alleges that various federal, state, and local laws govern the sale and distribution of firearms in the United States. Among other things, the New York Action Complaint alleges that:

- Purchasers of firearms must possess a license for the gun or pass a background check. *See, e.g.*, 18 U.S.C. § 922(t).

- Certain individuals are prohibited entirely from possessing firearms; among those are persons convicted of felonies, *see* 18 U.S.C. § 922(d)(1), and persons subject to a restraining order, *see* 18 U.S.C. § 922(d)(8).

- Firearms sold in the United States must have a serial number, *see* 18 U.S.C. §§923(g)(1)(A); 923(i), so that it is traceable if it is used in the commission of a crime.

22. The New York Action Complaint also alleges specific facts about the assembly of firearms and the regulation of firearm components. The New York Action Complaint alleges that:

- A firearm is made of several component parts, with the core of the firearm being referred to as the "frame" (for a pistol or a handgun) or the "receiver" (for a long gun such as a rifle or shotgun). (Ex. B ¶¶ 19–22).

- Frames and receivers are subject to the same background check, licensing, and serialization requirements as fully functional firearms, as they fall within the federal definition of "firearm." *Id.* § 921(a)(3) (defining "firearm" to include "the frame or receiver of" a firearm).

- Many firearms manufacturers and distributors sell "unfinished" frames or receivers—frames or receivers that do not yet constitute fully functional firearms. (Ex. B ¶ 23).

- Arm or Ally is among the companies that have sold and distributed unfinished frames or receivers in New York without background checks or serial numbers. (Ex. B ¶¶ 115–158).

- An unfinished frame or receiver forms a fully functional firearm when properly combined with other necessary components. (Ex. B ¶ 23).

- When an unfinished frame or receiver sold without a serial number is converted to a fully functional firearm, it is called a "ghost gun." (Ex. B. ¶ 28).

23. The New York Action Complaint alleges that Arm or Ally sold unfinished frames or receivers into New York State knowing, intending, or being willfully blind to the fact that these products would be converted into working, unserialized firearms. (Ex. B. ¶ 599).

24. Meanwhile, the New York Action Complaint alleges that Arm or Ally marketed its products as a way around serialization requirements and portraying serialization as optional, unnecessary, or undesirable. (Ex. B. ¶ 599).

25. The New York Action Complaint alleges that Arm or Ally violated federal law when it sold unfinished frames and receivers. (Ex. B. ¶ 599).

26. The New York Action Complaint alleges that Arm or Ally violated New York state law by knowingly selling or distributing unfinished frames and receivers into New York after April 26, 2022, when a law prohibiting those actions went into effect. (Ex. B. ¶¶ 96–106).

27. The New York Action Complaint alleges that Arm or Ally violated New York City law by shipping unfinished frames or receivers into New York City after February 23, 2020, which was the effective date of a New York City ban on the possession of an unfinished frame or receiver. (Ex. B. ¶ 104).

28. The New York Action Complaint alleges that many of the unfinished frames or receivers that Arm or Ally shipped into New York were shipped to individuals who were not permitted to possess firearms under federal law. (Ex. B ¶¶ 61–62). The New York Action Complaint further alleges that Arm or Ally deliberately marketed its unfinished frames and receivers to evade federal firearm regulations, including the serialization requirement. (Ex. B. ¶ 81). Arm or Ally allegedly undertook all these actions since June 2016. (Ex. B ¶ 19).

29. The New York Action Complaint alleges that Arm or Ally's actions have caused monetary harm to New York. In particular, New York alleges that it has had to increase spending on law enforcement to combat ghost-gun-related (and, thus, unfinished-frame-and-receiver-related) crime, and that it has had to expand community support and services to aid the victims of ghost-gun-related crime. (Ex. B ¶ 575).

30. The New York Action Complaint brings seven counts against Arm or Ally: (1) repeated and persistent illegality; (2) repeated and persistent fraudulent conduct; (3) public nuisance; (4) engaging in deceptive acts or practices in the conduct of business, trade, or commerce; (5) false advertising; (6) negligence per se; and (7) negligent entrustment. As a remedy, it seeks, in part, against Arm or Ally an injunction, restitution, and damages for the harms that Arm or Ally allegedly caused, disgorgement of revenue, abatement, civil penalties, and punitive damages.

## II. THE BUFFALO AND ROCHESTER ACTIONS

31. On December 20, 2022, the City of Buffalo filed a lawsuit (the "Buffalo Action," now captioned *City of Buffalo v. Smith & Wesson Brands, Inc., et al.*, No. 1:23-cv-00066-FPG (W.D.N.Y.)) against various defendants, including Arm or Ally. A true and accurate copy of the Buffalo Action Complaint is attached hereto as Exhibit C.

32. The next day, the City of Rochester filed a nearly identical lawsuit (the "Rochester Action," now captioned *City of Rochester v. Smith & Wesson Brands, Inc., et al.*, No. 6:23-cv-06061-FPG (W.D.N.Y.)) which also named Arm or Ally as one of several defendants. A true and accurate copy of the Rochester Action Complaint is attached hereto as Exhibit D.

33. Arm or Ally S is not a named defendant in the Buffalo and Rochester Actions' operative complaints.

34. The operative complaints in those actions allege that Arm or Ally engaged in the same conduct as the New York Action Complaint: knowingly selling and shipping unfinished frames and receivers into Buffalo or Rochester in violation of state and federal law.

35. The operative complaints in the Buffalo and Rochester Actions also include more general allegations about the firearms market in the United States. Those complaints allege that:

- Sales of firearms through those official channels—that is, sales by officially licensed firearms dealers to individuals who pass background checks or have licenses and are not prohibited from owning firearms—constitute the legal market for firearms in the United States.

- There is also, however, an illegal market for firearms, which encompasses sales that violate federal or state law, such as the sale of a firearm to a person convicted of a felony (who, consequently, could not pass a federal background check).

- Firearms may move from the legal to the illegal market; that is, a firearm may be sold legally only to subsequently be sold or distributed to a person not legally permitted to possess it.

36. Buffalo and Rochester allege that Arm or Ally contributed to the illegal firearms market, including by knowingly refusing to take actions that could help prevent the diversion of its products from the legal gun market to the illegal gun market, and that, in so doing it has helped to create a public nuisance within Buffalo and Rochester.

37. The damages alleged by Buffalo and Rochester are all but identical to the damages that New York claims to have suffered. Specifically, Buffalo and Rochester allege that they have had to increase spending on law enforcement to combat gun-related crime and expand community support and services to aid victims of gun-related crimes.

38. Buffalo and Rochester both assert four causes of action against Arm or Ally: (1) violation of New York General Business Law § 898 (a-e); (2) common law public nuisance;

(3) deceptive business practices in violation of New York General Business Law 349; and (4) deceptive business practices in violation of New York General Business Law 350.

39. The Buffalo and Rochester Actions seek, among other relief, compensatory damages, abatement, treble damages, and punitive damages.

40. Clear Blue collectively refers to the New York, Buffalo, and Rochester Actions as the "Ghost Gun Lawsuits" or the "Lawsuits."

### III. THE CLEAR BLUE POLICY

41. The Arm or Ally Companies have asserted a right to defense and indemnity from Clear Blue for the Ghost Gun Lawsuits.

42. Arm or Ally is the named insured to the Clear Blue Policy. Because Arm or Ally is a limited liability company, the Policy considers Arm or Ally an "insured." It also provides that Arm or Ally's "members" are "insureds, but only with respect to the conduct of [Arm or Ally's] business." Further, Arm or Ally's "managers are insureds, but only with respect to their duties as [Arm or Ally's] managers."

43. Arm or Ally S is not named as an insured under the Clear Blue Policy.

44. Under the Policy's insuring agreement, Clear Blue agrees to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Clear Blue also has the "right and duty to defend the insured against any 'suit' seeking those damages" but not in any "suit" to which the Clear Blue Policy does not apply. (Ex. A at 83).

45. The Clear Blue Policy includes an exclusion entitled "Expected or Intended Injury," which states that the Policy does not apply to "'bodily injury' . . . expected or intended from the standpoint of the insured." (Ex. A. at 84).

46. The Clear Blue Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Ex. A at 95).

47. The Clear Blue Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. A at 97).

### IV. CLEAR BLUE DENIES COVERAGE UNDER THE CLEAR BLUE POLICY.

48. On October 27, 2023, Arm or Ally tendered the Ghost Gun Lawsuits to Clear Blue through its third-party claims agent, North American Risk Services ("NARS"). Arm or Ally's notice of loss includes demands that Clear Blue pay for Arm or Ally's defense expenses and indemnify it for any settlements it agrees to or damages it is ordered to pay in the Ghost Gun Lawsuits. A true and accurate copy of Arm or Ally's notice of loss is attached hereto as Exhibit E.

49. On October 14, 2023, Arm or Ally S separately tendered the Ghost Gun Lawsuits to Clear Blue through NARS. Arm or Ally S's notice of loss similarly includes demands that Clear Blue pay for Arm or Ally's defense expenses and indemnify it for any settlements it agrees to or damages it is ordered to pay in the Ghost Gun Lawsuits. A true and accurate copy of Arm or Ally S's notice of loss is attached hereto as Exhibit F.

50. On December 3, 2024, Clear Blue communicated its coverage position to the Arm or Ally Companies for each of the Ghost Gun Lawsuits under the Clear Blue Policy. To date, the Arm or Ally Companies continue to dispute Clear Blue's representations about coverage under the Policy.

51. The Clear Blue Policy affords coverage to the Arm or Ally Companies for sums they must pay as damages because of "bodily injury" that took place during the policy periods and that were caused by an "occurrence," with the exception of bodily injury expected or intended from the standpoint of the insured.

52. There is no coverage for the Ghost Gun Lawsuits under the Clear Blue Policy because:

- The Ghost Gun Lawsuits do not allege "damages because of 'bodily injury'" sustained in Clear Blue Policy policy periods;

- The Ghost Gun Lawsuits seek certain remedies, such as equitable relief and injunctive relief in the form of nuisance abatement, that do not constitute "damages" pursuant to the Policy; and

- Arm or Ally S is not an insured under the Clear Blue Policy.

## FIRST CAUSE OF ACTION
## FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### (For a Declaration that Clear Blue is Not Obligated to Defend the Arm or Ally Companies in the Ghost Gun Lawsuits)

53. Clear Blue repeats and re-alleges the allegations presented in Paragraphs 1 through 52 above as though specifically set forth herein in this paragraph.

54. The Arm or Ally Companies have asserted they are entitled to a defense of the Ghost Gun Lawsuits under the Clear Blue Policy. Clear Blue disputes any such right to a defense.

55. The Clear Blue Policy does not provide coverage for the Arm or Ally Companies in connection with the Ghost Gun Lawsuits, because the Lawsuits do not seek damages caused by an "occurrence."

56. The Clear Blue Policy does not provide coverage for the Arm or Ally Companies in connection with the Ghost Gun Lawsuits, because the Lawsuits do not seek damages that they did not expect or intend for their standpoint.

57. The Clear Blue Policy does not provide coverage for the Arm or Ally Companies in connection with the Ghost Gun Lawsuits, because the Lawsuits do not seek damages because of "bodily injury."

58. The Clear Blue Policy does not provide coverage for the Arm or Ally Companies in connection with the Ghost Gun Lawsuits, because the Lawsuits seek damages that occurred before and after the relevant policy period—January 19, 2022 to January 19, 2023.

59. The Clear Blue Policy does not provide coverage for the Arm or Ally Companies in connection with the Ghost Gun Lawsuits, because any payments made by the Arm or Ally Companies would reflect the cost of compliance with injunctive or other relief, not damages because of "bodily injury."

60. The Clear Blue Policy does not provide coverage for Arm or Ally S specifically in connection with the Ghost Gun Lawsuits, because Arm or Ally S is not an insured under the Policy.

61. The Clear Blue Policy was in full force and effect at all relevant times, and Clear Blue has not breached any of the Policy's terms or conditions.

62. Clear Blue has no adequate remedy at law.

63. Clear Blue seeks a declaration that, under the terms, conditions, and exclusions of the Clear Blue Policy and applicable law, it has no duty to defend the Arm or Ally Companies in the Ghost Gun Lawsuits.

64. Accordingly, Clear Blue is entitled to a declaration that the Clear Blue Policy does not obligate it to defend the Arm or Ally Companies in the Ghost Gun Lawsuits.

**SECOND CAUSE OF ACTION**
**FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**
**(For a Declaration that Clear Blue is Not Obligated to Indemnify the Arm or Ally Companies in the Ghost Gun Lawsuits)**

65. Clear Blue repeats and re-alleges the allegations presented in Paragraphs 1 through 64 above as though specifically set forth herein in this paragraph.

66. The Arm or Ally Companies have asserted they are entitled to indemnity in connection with the Ghost Gun Lawsuits under the Clear Blue Policy. Clear Blue disputes any such right to indemnity.

67. Clear Blue seeks a declaration that, under the terms, conditions, and exclusions of the Clear Blue Policy and applicable law, it is not obligated to indemnify the Arm or Ally Companies in the Ghost Gun Lawsuits.

68. Accordingly, Clear Blue is entitled to a declaration that the Clear Blue Policy does not obligate it to indemnify the Arm or Ally Companies in the Ghost Gun Lawsuits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Clear Blue Insurance Company respectfully requests that the Court enter an Order and Judgment declaring that:

*(i)* The Clear Blue Policy does not obligate Clear Blue to defend the Arm or Ally Companies in the Ghost Gun Lawsuits; and

*(ii)* The Clear Blue Policy does not obligate Clear Blue to indemnity the Arm or Ally Companies for any sums it is obligated to pay as settlements of or judgments in the Ghost Gun Lawsuits.

Clear Blue also respectfully requests that the Court issue an Order granting such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: February 19, 2025

Respectfully submitted,

_Alexandra Nieto_
Alexandra N. Nieto
BARKER PATTERSON NICHOLS, LLP
300 Garden City Plaza, Suite 100
Garden City, New York 11530
Telephone:   (516) 282-3355
Facsimile:   (516) 908-4960
a.nieto@bpn.law

David M. Alt (*pro hac vice* application forthcoming)
BATESCAREY LLP

191 North Wacker Drive, Suite 2400
Chicago, Illinois 60606
Telephone:	(312) 762-3100
Facsimile:	(312) 762-3200
dalt@batescarey.com

*Attorneys for Plaintiff,*
*Clear Blue Insurance Company*